# CITATION

| | | |
|---|---|---|
| VINA BOSLEY, ET AL |  | Case: 00042468 |
| Versus | | Division: E |
| | | 23rd Judicial District Court |
| ATALCO GRAMERCY, LLC | | Parish of St. James |
| | | State of Louisiana |

TO:
ATALCO GRAMERCY, LLC
THROUGH CAPITOL CORPORATE SERVICES, INC.
8550 UNITED PLAZA BUILDING II, STE. 305
BATON ROUGE, LA 70809

YOU ARE HEREBY SUMMONED to comply with the demand contained in the accompanying petition, CLASS ACTION COMPLAINT FOR DAMAGES a true and faithful copy whereof accompanies this citation, or to make an appearance by filing an answer or other pleading thereof, in writing, with the Clerk of the Twenty-Third Judicial District Court of the State of Louisiana in and for the Parish of St. James, at his office in the Courthouse in the Parish and State aforesaid, within TWENTY ONE (21) DAYS after the service hereof. Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

WITNESS the Honorable Judges of the 23rd Judicial District in and for the Parish of St. James, State of Louisiana, this 25TH day of SEPTEMBER, 2024.

Shane M. LeBlanc
Clerk of Court
P.O. Box 63
Convent, LA. 70723
225-562-2270 (TEL.)

BY: _____
Deputy Clerk of Court

ISSUED AT THE REQUEST OF:
SCOTT R. BICKFORD
ATTORNEY FOR PLAINTIFF
(504) 581-9065

**EXHIBIT C**

[ SERVICE COPY ]

**23rd JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. JAMES**
**STATE OF LOUISIANA**

2024 SEP 25 AM 11:39

NO. 42468    DIVISION:    SECTION E
DIVISION E

**VINA BOSLEY and SHAWN COOK SR.**
individually and on behalf of all others similarly situated,

**Plaintiffs**

**VERSUS**



**ATALCO GRAMERCY LLC,**
**(f/k/a/ GRAMERCY HOLDINGS I, LLC)**

**Defendant**

FILED: September 25, 2024        Shawn W. ____
                                  ~~DEPUTY~~ CLERK
                                  DIVISION E

---

## CLASS ACTION COMPLAINT FOR DAMAGES

**NOW COMES** Plaintiffs/Putative Class Representatives VINA BOSLEY and SHAWN COOK SR., on behalf of themselves and all others similarly situated, seeking class certification and complain and allege on information and belief the following against ATALCO GREMERCY, LLC (f/k/a GRAMERCY HOLDINGS I, LLC):

1.   This is a class action brought pursuant to LA C.C.P. art. 591, *et seq.*, wherein Plaintiffs seek damages in relation to Defendant's ownership and operation of its alumina refinery facility located at 1111 E Airline Hwy, Gramercy, St. James Parish, Louisiana 70052 (the "**Facility**").

2.   Through Defendant's construction, operation, and maintenance of the Facility, it wrongfully emits substantial and unreasonable dust and/or air particulates that physically invade the Plaintiffs' and putative Class's properties.

## PARTIES

3.   Plaintiff/Putative Class Representative Vina Bosley resides at a home located at 415 N. Montz Avenue, Gramercy, St. James Parish, Louisiana 70052. She owns her home.

4.   Plaintiff/Putative Class Representative Shawn Cook Sr. resides at a home located at 509 N. Millet Street, Gramercy, St. James Parish, Louisiana 70052. He owns his home.

1

5. Made Defendant in this action is ATALCO GRAMERCY, LLC, (f/k/a GRAMERCY HOLDINGS I, LLC), which is a Delaware limited liability company authorized to do business in the State of Louisiana. Defendant owns and/or operates the Facility.

6. Defendant is liable *in solido* to Plaintiffs and the putative Class for all elements of damages allowed by Louisiana law, whether past, present or future damages, in an amount that is just and reasonable in the premises.

## JURISDICTION AND VENUE

7. This Court has jurisdiction because Defendant carries on a continuous and systematic part of its business within the State of Louisiana.

8. Venue is proper in this Court pursuant to La. C.C.P. art. 74 because Plaintiffs sustained damages in St. James Parish.

9. Pursuant to La. C.C.P. art. 893, the damages sought by Plaintiffs satisfy the amount required to establish jurisdiction of this court and they are in an amount sufficient for a trial by jury.

## FACTUAL ALLEGATIONS

10. Defendant, its predecessors, and/or its agents constructed or directed construction of the Facility.

11. Defendant exercises ownership and control of the Facility which is situated on a 3,300-acre plot. The Facility borders the Mississippi River and is adjacent to residential properties on both the east and west banks of the Mississippi River.

12. The Plaintiffs and putative Class reside within 2 miles of the Facility property boundary (the "**Class Area**").

13. Defendant's Facility is a bauxite ore refinery that produces alumina, an ingredient used to make aluminum. The rust-colored ore is shipped from Defendant's bauxite mine in Jamaica and is laced with a variety of natural minerals, including radioactive elements and heavy metals like mercury.

14. Defendant utilizes the Bayer process for refining bauxite ore into alumina, which generally consists of four steps: digestion, clarification, precipitation, and calcination.

15. Defendant's alumina refining process generally proceeds as follows:

   a) Bauxite is unloaded from ships onto the Mississippi River onto a conveyor belt to be brought into the Facility;

2

    b) A Bradford Breaker is used to separate limestone from the bauxite ore;

    c) The bauxite ore is transferred into a digestion tank, where it is mixed with spent liquor consisting of 50% caustic and water and heated to extract alumina;

    d) Red mud is separated from the liquor mixture and stored on site in ponds;

    e) Seed hydrate is added to the red mud to precipitate out usable alumina to be shipped offsite.

16. The dust produced by the bauxite ore is red, while the dust emitted by refined alumina is white. Both are emitted from the Facility in significant quantities and are the subject of frequent community complaints.

17. The Plaintiffs' and putative Class's properties have been, and continue to be, invaded by fugitive dust emitted from the Facility.

18. A properly designed, operated, and maintained refinery will adequately capture, remove, and dispose of fugitive dust emissions and prevent them from escaping into the ambient air.

19. Defendant is required to abate fugitive dust emissions by, among other things, operating the Facility in a manner that adequately captures, controls, and/or mitigates those emissions so as to prevent them from escaping into the ambient air surrounding the Facility, and by implementing other reasonably available emission mitigation, elimination, and control systems at the Facility.

20. Defendant has failed to use adequate fugitive dust mitigation strategies, processes, technologies, and/or equipment to control fugitive emissions from the Facility and prevent those fugitive emissions from physically invading the homes and properties of Plaintiffs and putative Class.

21. Defendant's failures to prevent off-site fugitive dust include, but are not limited to:

    a) Utilizing inadequate systems for transporting, loading, unloading and storing raw materials, including the mismanagement of equipment, bauxite ore, and byproducts;

    b) Failing to train and educate employees on safe procedures for handling Facility materials;

    c) Failing to monitor and keep records of Facility equipment and emissions;

    d) Failing to develop and/or implement adequate fugitive dust prevention plans;

    e) Failing to utilize other fugitive dust prevention, elimination, and mitigation measures and technologies available to Defendant; and

    f) Other failures revealed during discovery.

3

22. Fugitive dust from the Facility has interfered with activities in the surrounding areas (Class Area) and has precluded the reasonable use and enjoyment of private and public spaces in those areas.

23. The Facility and its emissions have been the subject of frequent and numerous complaints by residents in the nearby residential area.

24. The Facility's fugitive dust emissions preclude Plaintiff/Putative Class Representatives from the ordinary and regular use of their properties and hinders their abilities to sit outside and engage in outdoor activities.

25. The Plaintiffs/Putative Class Representatives describe the Facility dust as follows:

   a) Plaintiff Cook reports that the dust blankets his "roof, boat, and cars", forcing him to "wash the vehicles" and even replace his boat cover "because I couldn't get it all removed." In addition, Plaintiff Cook states that he is unable to use his yard and is forced to keep his windows closed due to the dust.

   b) Plaintiff Bosley stated that "my home has to be constantly aired out due to frequent dust build up. My air filter has been changed more than usual... You can visually feel dust floating around." Additionally, Plaintiff Bosley states that she cannot sit out on her porch due to the dust and has to completely clean her house every few days due to constant dust buildup.

26. More than 65 households within the proposed Class Area have contacted Plaintiffs' counsel in relation to the fugitive dust emissions originating from the Facility. Below is a small sample of what members of the putative Class have conveyed to Plaintiffs' counsel:

   a) Putative Class Member Rashod Albert reported due to the dust from Defendant's Facility, "The dust particles seep into my home causing contamination. It also covers my vehicle. It is causing additional cleaning."

   b) Putative Class Members Joseph and Courtney Barnett describe the dust from Defendant's Facility as "Red dust/silt frequently in my pool. Dust settles on vehicles and on concrete...Red dust is a given and this nuisance has become a 'way of life.'"

   c) Putative Class Member Kurt Becnel reported that "I have a metal roof which was silver/gray. As a result of Atlantic Alumina it is covered & stained with red residue."

   d) Putative Class Member Katherine Drayton Harris reported that "Every morning my car and porch and house is covered with dust and I have to wash it off. This is getting expensive because it is messing up the paint. There are days when a yellowish substance is mixed with it."

   e) Putative Class Member Garland Rome reported that dust from Defendant's Facility "Dust all over home, automobiles and plants around home."

27. Defendant's well-documented pattern of failing to control the Facility's emissions is further demonstrated by the following:

4

a) On May 4, 2024, a Louisiana Department of Environmental Quality inspector reported that "aluminum oxide dust (is) visible on some vehicles, plants, and homes" throughout Gramercy.

b) In 2022, Defendant paid a fine of $75,000 to resolve numerous air emissions violations incurred between 2016 and 2020.

c) These violations include, but are not limited to, the following:

   i   Defendant failed to use and/or diligently maintain a fogging system for the West Dock Hoppers intended to control dust emissions during the unloading of bauxite from ships and into the hopper. As a result the DEQ observed dust being emitted from the hopper and traveling north across the Mississippi River.

   ii   Defendant failed to use and/or diligently maintain the Alumina Storage Bin and visible emissions were from this portion of the Facility. During a LDEQ inspection in June 2020, visible white dust emissions were observed and the Alumina Storage Bin Dust Collector equipment were not used and/or maintained in proper working order.

   iii   Defendant failed to adequately monitor its emissions and emissions mitigation equipment as required in its Title V permits.

d) In 2022, the United States Environmental Protection Agency ("EPA") conducted an unannounced inspection of the Facility, during which significant dust emissions were observed coming from the bottom of the conveyor and the Bradford Breaker, although the conveyor and hopper were not running.

e) Additionally, the EPA observed fugitive dust and piles of bauxite dust being blown off from the processing steps throughout the Facility.

25. The Facility has emitted, and continues to emit, preventable fugitive dust that is noticeable beyond the bounds of its property.

26. Defendant continues to operate its Facility in violation of Louisiana law and its operating permits.

27. The fugitive dust is offensive to the Plaintiffs and putative Class Members and would be offensive to reasonable people of ordinary health and sensibilities.

28. The fugitive dust has caused property damage and substantially interfered with the abilities of the Plaintiffs and putative Class to reasonably use and enjoy their homes and properties.

29. The invasion of the Plaintiffs' and putative Class's properties by fugitive dust has adversely impacted the value of their properties.

30. The Plaintiffs and the putative Class are a limited subset of the broader community, namely owners/occupants and renters of residential properties who live within the Class Area and fit within the Class definition.

5

31. Members of the public including, but not limited to, businesses, employees, commuters, tourists, visitors, customers, clients, students, and patients have been harmed by the fugitive dust emitted from the Facility into public spaces. However, unlike the Plaintiffs and putative Class, members of the public who are outside of the Class definition have not suffered damages in the form of diminished property values and/or the loss of use and enjoyment of their private property.

32. Defendant knew about its substantial noxious dust emissions through numerous complaints and extensive media coverage.

33. Defendant intentionally, knowingly, willfully, recklessly, and/or negligently failed to properly construct, maintain, and/or operate the Facility. Defendant caused an invasion of the Plaintiffs' and putative Class's properties by fugitive dust on frequent, intermittent, and reoccurring occasions too numerous to list individually.

## CLASS ACTION ALLEGATIONS

### A. Definition of the Class

34. Plaintiffs bring this action individually and on behalf of all persons that the Court may determine appropriate for class certification. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within two (2) miles of the Facility property boundary since September 25, 2023.**

The definitional Class boundary is subject to modification as discovery discloses the location of all persons properly included in the Class. Plaintiffs reserve the right to propose one or more subclasses if discovery reveals that such sub-classes are appropriate.

35. This case is appropriate for determination through the Louisiana Class Action procedure (La C.C.P. art. 591, *et seq.*) for the following reasons:

   a) The Class, which includes hundreds of members, is so numerous that joinder of all members is impracticable;

   b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

   c) Questions of law and fact which are all common to the Class predominate over any questions of law or fact affecting only individual members of the Class;

   d) The claims of the representative Plaintiffs are typical of the claims of the Class;

   e) A class action provides a fair and efficient method for adjudication of the controversy;

6

  f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

  g) There are no unusual difficulties foreseen in the management of this class action; and

  h) Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

### B. Numerosity

36. There are hundreds of separate residences within the Class Area. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

37. Further, the prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is therefore appropriate.

### C. Commonality

38. Numerous common questions of law and fact exist and predominate over any individual questions affecting Class Members, including, but not limited to, the following:

  a) Whether and how the Defendant wrongfully, intentionally, knowingly, recklessly, and/or negligently failed to maintain and operate the Facility, thereby causing fugitive dust to invade their properties;

  b) Whether Defendant owed any duties to the Class Members;

  c) Which duties Defendant owed to the Class Members;

  d) Which steps Defendant has and has not taken in order to control the emission of fugitive dust through the maintenance and operation of the Facility;

  e) Whether and to what extent fugitive dust from the Facility was dispersed over the Class Area;

  f) Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Facility would result in an invasion of the Class Members' property interests;

  g) Whether the degree of harm suffered by the Class Members constitutes a substantial annoyance, interference, or deprivation with their use and enjoyment of their properties; and

  h) The proper measure of damages incurred by the Class Members.

### D. Typicality

39. The claims of the named Plaintiffs are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

40. The claims of the named Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failures of Defendant to properly construct, maintain and operate the Facility.

41. All Class Members have suffered injury in fact as a result of the invasion of their properties by fugitive dust emitted by Defendant's Facility. The fugitive dust interferes with their ability to use and enjoy their homes and has diminished their property values.

### E. Adequacy of Representation

42. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and they do not have interests adverse to the Class.

43. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, and in particular class actions involving environmental concerns, including the emission of fugitive dust. To best represent the interests of the Class, Martzell, Bickford & Centola has agreed to work with Liddle Sheets PC in this matter. Liddle Sheets PC has litigated over one hundred cases across the nation involving the environmental contamination of neighborhoods, often involving fugitive dust emitted from industrial/commercial facilities. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

### F. Class Treatment is the Superior Method of Adjudication

44. Pursuant to La. C.C.P. art. 591 § (B)(3), a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

   c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

   d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

8

e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f) Plaintiffs seek equitable relief relating to Defendant's common actions and failures to act, and the equitable relief sought would commonly benefit the Class as a whole;

g) Litigating these claims in one action will achieve efficiency and promote judicial economy; and

h) The proposed class action is manageable.

## CAUSE OF ACTION I- NUISANCE

45. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

46. Defendant owed, and continues to owe, a duty to Plaintiffs and the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

47. The fugitive dust which entered the Plaintiffs' and Class's properties originated from the Facility, which was improperly and unreasonably constructed, maintained, and/or operated by Defendant.

48. The fugitive dust invading the Plaintiffs' and Class's properties is indecent and offensive to people with ordinary health and sensibilities, and obstructs the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. This includes but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the full value of their homes and properties; and

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and discomfort including, but not limited to, creating a reluctance to invite guests to their homes and preventing the Plaintiffs and Class Members from utilizing the outdoor areas of their respective properties.

49. The Plaintiffs' and Class's properties are situated in such proximity to Defendant's Facility as to constitute "neighboring" properties, in that they are near enough to be impacted by the tangible effects of fugitive dust emitted from the Facility.

50. By constructing and then failing to reasonably repair, maintain, and/or operate the Facility, thereby causing unreasonable fugitive dust to invade the Plaintiffs' and Class's properties,

Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class's properties.

51. As a foreseeable, direct, and proximate result of the forgoing misconduct of the Defendant, Plaintiffs and the Class have suffered damages to their properties as alleged herein.

52. Plaintiffs and Class Members did not consent to the invasion of their properties by Defendant's fugitive dust, which is ongoing and constitutes a nuisance.

53. The damages suffered by the Plaintiffs and Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their lands and properties, and decreased property values, which are not harms suffered by the general public.

54. The general public is also impacted by the Facility's fugitive dust. Many members of the general public are impacted when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property or decreased property values.

55. Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

56. Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a nuisance. Defendant is liable for all damages arising from such nuisance, including compensatory relief.

## CAUSE OF ACTION II- NEGLIGENCE

57. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

58. Pursuant to La. Admin. Code Pt. III, § 905, Defendant owed, and continues to owe, a duty to the Plaintiffs and Class to operate and maintain the Facility in a reasonable manner and to reasonably prevent the fugitive emission of fugitive dust.

59. Defendant's duty to conform to La. Admin. Code Pt. III, § 905 requires Defendant to install, use, and maintain air pollution control systems at the Facility to control dust emissions.

60. Defendant's fugitive dust emissions can be mitigated through, *inter alia*, proper enclosures, ventilation systems/filters, scrubbers, by utilizing vapor recovery units while loading/unloading materials, and through proper monitoring, sampling, and capturing of emissions. Accordingly, dust control is practically feasible.

61. Defendant is a highly profitable corporation with multi-million dollar revenue. Accordingly, it is economically feasible for Defendant to implement dust control measures and/or equipment at the Facility.

62. Methods to mitigate Facility dust, such as enclosures, ventilation systems/filters, scrubbers, and vapor recovery unites, exist and are available. Accordingly, dust control is technologically feasible.

63. Defendant breached the duty imposed by La. Admin. Code Pt. III, § 905 by failing to install, use, and/or maintain feasible air pollution control systems, thus failing to control fugitive dust emitted by the Facility.

64. By failing to properly construct, maintain and operate the Facility, Defendant failed to exercise the duty of ordinary care and diligence.

65. Defendant's breach of duty was the direct and proximate cause of the invasion by fugitive dust upon the Plaintiffs' and Class's homes, lands, and properties on occasions too numerous to list individually.

66. Such invasions by fugitive dust were the foreseeable result of the foregoing conduct of Defendant (or lack thereof), and the Plaintiffs and Class suffered damages to their properties as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and the diminution of property values.

67. Defendant negligently allowed conditions to exist and perpetuate that caused fugitive dust to invade the Plaintiffs' and Class's properties. Defendant is liable for all damages arising from such negligence, including compensatory relief.

## CAUSE OF ACTION III- TRESPASS

68. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

69. Plaintiffs own and exercise exclusive control over their properties.

70. As alleged herein, Defendant failed to properly construct, maintain, and/or operate the Facility, thereby allowing fugitive dust to escape the Facility and invade the private residential properties of Plaintiffs and the Class.

71. As a direct and proximate result of Defendant's conduct, fugitive dust has physically invaded, entered, settled upon, and accumulated upon the property of Plaintiffs and the Class on occasions too numerous to identify independently. Such invasions are an ongoing occurrence.

72. The fugitive dust substantially interferes with Plaintiffs' and the Class' exclusive possession, use, and enjoyment of their properties, thereby causing substantial damage and constituting a trespass thereupon. This includes, but is not limited to:

   a. Forcing Plaintiffs and the Class to remain inside their homes and forgo use of their yards, porches, and other outdoor spaces, and to generally refrain from outdoor activities;

   b. Causing Plaintiffs and the Class to keep their doors and windows closed when they would otherwise have them open;

   c. Depriving Plaintiffs and the Class of the full value of their homes and properties;

   d. Causing Plaintiffs and the Class to expend significant time and money cleaning Defendant's fugitive dust emissions off of their property; and

   e. Causing Plaintiff and the Class inconvenience and reluctance to invite guests to their homes.

73. Plaintiffs did not consent to the invasion of their property by fugitive dust from the Facility.

74. Defendant's actions resulting in the trespass upon Plaintiffs' and the Class's properties were and continue to be intentional, willful, malicious, and made with a conscious disregard for the rights of Plaintiff and the Class. Defendant is liable for all damages flowing from this trespass, including compensatory relief.

## DEMAND FOR TRIAL BY JURY

75. Plaintiffs hereby demand a trial by jury herein on all claims.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to La. C.C.P. art. 591 *et seq.*;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and Class Members as against Defendant;

D. An award to the Plaintiffs and Class Members for actual and compensatory damages, including pre- and post- judgment interest;

E. An Order holding that the entrance of the aforementioned fugitive dust upon the Plaintiffs' and Class's properties constituted a nuisance;

F. An Order holding that the Defendant was negligent in causing fugitive dust to repeatedly invade and interfere with the Plaintiffs' and Class's private residential properties;

G. An Order holding that the entrance of the aforementioned fugitive dust upon the Plaintiffs' and the Class' properties constituted a trespass; and

H. Such further relief, both general and specific, that this Honorable Court deems just and proper.

Dated: September 25, 2024                    Respectfully submitted,

**MARTZELL, BICKFORD & CENTOLA**

*/s/ Neil N.*

Scott R. Bickford (#1165)
Lawrence J. Centola (#27402)
Neil F. Nazareth (#28969)
Jason Z. Landry (#33932)
Spencer R. Doody (#27795)
**MARTZELL, BICKFORD & CENTOLA**
338 Lafayette Street
New Orleans, Louisiana 70130

T: (504) 581-9065
E: srb@mbfirm.com
E: lcentola@mbfirm.com
E: nnazareth@mbfirm.com
E: jzl@mbfirm.com
E: srd@mbfirm.com

AND

Steven D. Liddle*
Laura L. Sheets*
D. Reed Solt*
*Pro hac vice* applications to be submitted
**LIDDLE SHEETS P.C.**
975 E. Jefferson Avenue
Detroit, MI 48207
T: (313) 392-0015
E: sliddle@lsccounsel.com
E:lsheets@lsccounsel.com
E:rsolt@lsccounsel.com

*Attorneys for the Plaintiffs & Putative Class*

PLEASE SERVE:

Capitol Corporate Services, Inc.
8550 United Plaza Building II, Ste. 305
Baton Rouge, LA 70809
ATTN: Atalco Gramercy LLC

I hereby certify that the above and foregoing is a true and correct copy of the original on file and of record in my office

Dty Clerk of Court
Parish of St. James, LA
Date SEP 2 5 2024